# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, et al., </br></br> Plaintiffs, </br></br> v. </br></br> UNITED STATES DEPARTMENT OF TRANSPORTATION, et al., </br></br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:14-cv-00085-KBJ </br> The Honorable Ketanji Brown Jackson |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

    A. Final rule ..................................................................................................................1

    B. Complaint ..................................................................................................................3

ANALYSIS…………………………………………………………………………………4

    A. The final rule is an "order" under §46100(a) ..................................................................5

    B. The final rule was issued "in whole or in part" under the Federal Aviation Act ................8

CONCLUSION……………………………………………………………………...................10

# **TABLE OF AUTHORITIES**

**Cases**

*Abromowitz v. EPA*,
    832 F.2d 1071 (9th Cir. 1987) .................................................................................... 9

*Am. Petroleum Inst. v. SEC*,
    714 F.3d 1329 (D.C. Cir. 2013)…………………………………………………….. 4, 6, 7

*Avia Dynamics, Inc. v. FAA*,
    641 F.3d 515 (D.C. Cir. 2011) ..................................................................................... 5

*Aviators for Safe and Fairer Regulation, Inc. v. FAA*,
    221 F.3d 222 (1st Cir. 2000) ........................................................................................ 5

*Citizens to Preserve Overton Park v. Volpe*,
    401 U.S. 402 (1971) ..................................................................................................... 6

*City of Dania Beach v. FAA*,
    485 F.3d 1181 (D.C. Cir. 2007) ................................................................................... 5

*Deutsche Lufthansa Aktiengesellschaft v. Civil Aeronautics Bd.*,
    479 F.2d 912 (D.C. Cir. 1973) ..................................................................................... 7

*Helicopter Ass'n Int'l, Inc. v. FAA*,
    722 F.3d 430 (D.C. Cir. 2013) ..................................................................................... 5

*Investment Co. Inst. v. Bd. of Governors of the Fed. Reserve Sys.*,
    551 F.2d 1270 (D.C. Cir. 1977) ............................................................................... 5, 6

*Nat'l Air Transp. Ass'n v. McArtor*,
    866 F.2d 483 (D.C. Cir. 1989) ..................................................................................... 5

*NW Food Processors Ass'n v. Reilly*,
    886 F.2d 1075 (9th Cir. 1989) ..................................................................................... 9

*Rurhgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ..................................................................................................... 4

*Suburban O'Hare Comm'n v. Dole*,
    787 F.2d 186 (7th Cir. 1986) ....................................................................................... 9

*Telecomms. Research and Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Circuit 1984) ................................................................................ 10

*U.S. ex rel Long v. SCS Bus. & Technical Inst., Inc.*,
    173 F.3d 870 (D.C. Circuit 1999) ................................................................................ 9

*Watts v. SEC*,
    482 F.3d 501 (D.C.Cir.2007) ....................................................................................... 4

**Statutes**

28 U.S.C. § 1631 .............................................................................................................. 10
29 U.S.C. § 794 ............................................................................................................ 3, 9
49 U.S.C. § 46110 ........................................................................................................ 4, 7
49 U.S.C. § 46110(a) ................................................................................................Passim
49 U.S.C. § 46110(c) ........................................................................................................ 5

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................................................ 1

**Regulations**

14 C.F.R. § 382.43(c)-(e) .................................................................................................. 3
14 C.F.R. § 382.57 ............................................................................................................ 3
49 C.F.R. § 27. ......................................................................................................... 2, 3, 8
Nondiscrimination on the Basis of Disability in Air Travel,
    73 Fed. Reg. 27614 (May 13, 2008)……………………...…………………………1

Nondiscrimination on the Basis of Disability in Air Travel:  Accessibility of Web Sites and Automated Kiosks at U.S. Airports,
     76 Fed. Reg. 59307(September 26, 2011……………………………………...…………2

Nondiscrimination on the Basis of Disability in Air Travel:  Accessibility of Web Sites and Automated Kiosks at U.S. Airports,
    78 Fed. Reg. 67882 (November 12, 2013)……………………………………….………2

## INTRODUCTION

In 2008, the Department of Transportation ("the Department") initiated a rulemaking process to, among other goals, ensure that airline passengers with disabilities would have equal access to travel-related information and services via airport kiosks. The culmination of this process with respect to the goal of equal access was a final rule issued by the Department in November 2013 requiring that new automated airport kiosks installed at U.S. airport within 10,000 or more annual enplanements must be accessible to passengers with disabilities starting three years after the effective date of the rule until at least twenty-five percent of kiosks in each location at an airport are accessible. The rule further requires that within ten years after the rule's effective date, at least twenty-five percent of the kiosks in every location at an airport must be accessible. These requirements apply to all automated airport kiosks owned, leased, or controlled by airlines and those that are jointly owned, leased, or controlled by airlines and airports.

Plaintiffs now bring the instant lawsuit challenging the Department's rulemaking process and its authority to promulgate the final rule. Because Plaintiffs' claims must be brought in a court of appeals, however, this Court lacks jurisdiction to hear this case. It should therefore dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

**A.    Final rule**

In May 2008, the Department issued a final rule amending its regulations under the Air Carrier Access Act, 14 C.F.R. Part 382, to broaden their application to foreign

carriers and add certain new accessibility requirements.  *See* Nondiscrimination on the Basis of Disability in Air Travel, 73 Fed. Reg. 27614 (May 13, 2008).  In the preamble to the final rule, the Department announced that it was deferring action on certain issues and provisions addressed in the original rulemaking proposal "in order to seek further information on their cost and technical feasibility."  *Id*. at 27619.  Two of the issues for which the Department delayed consideration concerned the accessibility of automated airport kiosks maintained by air carriers and airports and the Internet Web sites maintained by carriers and their agents.  *Id*.  Subsequently, in September 2011, the Department issued a Supplemental Notice of Proposed Rulemaking ("SNPRM") proposing to require U.S. and foreign carriers to ensure that their Web sites and automated airport kiosks are accessible.  Nondiscrimination on the Basis of Disability in Air Travel:  Accessibility of Web Sites and Automated Kiosks at U.S. Airports, 76 Fed. Reg. 59307 (September 26, 2011).  The goal of this rulemaking was to establish the "technical criteria and procedures that apply to automated airport kiosks and to Web sites on which covered air transportation is marketed to the general public in the U.S. to ensure that individuals with disabilities can readily use these technologies to obtain the same information and services as other members of the public."  *Id*.  The SNPRM further proposed to revise 49 C.F.R. Part 27, the Department's airport accessibility regulations[1] to require U.S. airports having 10,000 or more annual enplanements and receiving federal funds to  ensure that automated kiosks they jointly own, lease, or control with carriers are accessible.  *Id*. at 59309-59310.

---

[1] *See* 49 C.F.R. Pt. 27, Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.

In November 2013, the Department issued its final rule amending Part 382 to require accessibility of airline Web sites and automated airport kiosks ("final rule"). Nondiscrimination on the Basis of Disability in Air Travel: Accessibility of Web Sites and Automated Kiosks at U.S. Airports, 78 Fed. Reg. 67882 (November 12, 2013). With respect to airline Web site accessibility, the final rule requires carriers to ensure that their primary Web sites marketing air transportation to consumers in the U.S. meet certain accessibility specifications within three years of the date of the rule. 14 C.F.R. 382.43(c)-(e). As for kiosk accessibility, in relevant part, the rule requires airlines to ensure that starting three years after the effective date of the rule, all automated kiosks they install are accessible, until at least twenty-five percent of the kiosks they own, lease, or control in each location at an airport are accessible. 14 C.F.R. § 382.57(a)(1). The rule further requires that airlines ensure that at least twenty-five percent of all the automated kiosks that they own, lease, or control at an airport be accessible within ten years of the effective date of the rule.[2]  14 C.F.R. 382.57(a)(2). Finally, the rule makes clear that these same accessibility requirements apply to shared-use kiosks that are jointly owned, leased, or controlled by carriers and by airport operators receiving federal funds. 14 C.F.R. § 382.57(b); 49 C.F.R. § 27.71(j). In promulgating these rules, the Department relied on its statutory authority pursuant to 49 U.S.C. 41702, 41705, 41712, and 41310 for regulatory actions affecting 14 C.F.R. Part 382, and on Section 504 of the Rehabilitation Act of 1973 (the "Rehab Act"), 29 U.S.C. § 794, for regulatory actions affecting 49 C.F.R. Part 27. 78 Fed. Reg. at 67883.

---

[2]  The regulation currently requires that airlines must ensure that at least twenty-five percent of all automated kiosks that they own, lease, or control at an airport be accessible within *nine* years of the effective date of the rule. The nine-year time period is a drafting error.

**B.     Complaint**

Plaintiffs, the National Federal of the Blind and two legally blind individuals, initiated the instant lawsuit on January 22, 2014.  *See generally* Compl., ECF No. 1.  In their complaint, Plaintiffs assert four violations of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.  First, Plaintiffs assert that the Department exceeded its statutory authority under the ACAA in promulgating the final rule as it pertains to kiosks because the ACAA applies only to the transporting of passengers "point-to-point," a process to which Plaintiffs claim check-in kiosks are unrelated.  Compl. ¶¶ 32-40.  Plaintiffs next contend in the second and third counts of their complaint that the Department improperly relied on estimates from airlines concerning the costs of complying with accessibility requirements.  Compl. ¶¶ 41-62.  Fourth and finally, Plaintiffs argue that the Department improperly relied on information that it did not disclose until the final rule was announced.  Compl. ¶¶ 63-78.  Among other relief, Plaintiffs ask that the Court vacate the final rule and enjoin the Department from enforcing it.  Compl., Prayer for Relief.

## ANALYSIS

"Congress is free to 'choose the court in which judicial review of agency decisions may occur.'"  *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (citations omitted) (quoting *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007)).  Such "[l]imits on subject-matter jurisdiction 'keep the federal courts within the bounds the Constitution and Congress have prescribed,' and those limits 'must be policed by the courts on their own initiative.'"  *Watts*, 482 F.3d at 505 (quoting *Rurhgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  Although in the D.C. Circuit "the normal default rule is that persons seeking review of agency action go first to district court rather

4

than to a court of appeals," initial review occurs at the appellate level where "a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action." *Am. Petroleum Inst.*, 714 F.3d at 1332.

In this case, Plaintiffs' challenge to the Department's final rule is governed by 49 U.S.C. § 46110, which vests jurisdiction over challenges to certain "orders" of the Department in federal courts of appeals. The relevant provision of the statute states that

> a person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . in whole or in part under [Part A of the Federal Aviation Act 49 U.S.C. §§ 46101-46507] may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C. § 46110(a). The court of appeals' jurisdiction pursuant to § 46110(a) is exclusive. 49 U.S.C. § 46110(c). As discussed below, Plaintiffs are required to bring their challenge to the Department's final rule in the court of appeals because it constitutes an "order" that was issued "in whole or in part" under the Federal Aviation Act.

**A.    The final rule is an "order" under § 46110(a)**

As an initial matter, the final rule constitutes an "order" for purposes of § 46110(a). As several courts have held, the word "order" as used in the statute has been "broadly construed" and "should be read expansively." *Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 520 (D.C. Cir. 2011); *see also City of Dania Beach v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007); *Aviators for Safe and Fairer Regulation, Inc. v. FAA*, 221 F.3d 222, 225 (1st Cir. 2000) ("The term 'order' is read expansively in review statutes generally . . . and [in § 46110(a)] specifically."). This broad construction of the word "order" includes final regulations promulgated by an agency, including the same type of

rule promulgated here by the Department. *See Helicopter Ass'n Int'l, Inc. v. FAA*, 722 F.3d 430, 430 (D.C. Cir. 2013) (exercising jurisdiction over initial challenge to Federal Aviation Act rule requiring use of certain routes by helicopter pilots); *Nat'l Air Transp. Ass'n v. McArtor*, 866 F.2d 483 (D.C. Cir. 1989) (holding that two final rules promulgated pursuant to the Federal Aviation Act concerning flammability of seat cushions were "orders" under predecessor statute of § 46110(a)); *see also Investment Co. Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 551 F.2d 1270, 1276 (D.C. Cir. 1977) (rejecting approach taken by courts that "persist in reading special review statutes covering 'orders' as not encompassing regulations"). Under this long-standing broad construction of the statute, the Department's final rule at issue in this litigation qualifies as an "order" under § 46110(a).

Construing § 46110(a)'s reference to "order" to include final rules, moreover, is consistent with the purpose of jurisdictional statutes. As the D.C. Circuit has explained, the use of "order" in such statutes typically means "any agency action capable of review on the basis of the administrative record" and "the availability of a record for review . . . is now the jurisdictional touchstone." *Investment Co. Inst.*, 551 F.2d at 1277-78 (citation omitted). This is because "the typical Administrative Procedure Act case can be resolved on the administrative record," meaning that "a factual hearing in the district court is unnecessary." *Am. Petroleum Inst.*, 714 F.3d at 1333 (citation omitted). In these cases, "requiring petitioners challenging regulations to go first to the district court results in unnecessary delay and expense." *Id.* (citation omitted).

Further factual development in this case is likewise unnecessary. Plaintiffs bring each of their four challenges pursuant to the Administrative Procedure Act, *see* Compl.,

ECF No. 1, ¶1.  Consequently, the Department's actions should be reviewed on the basis of the administrative record.  *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ("[APA] review is to be based on the full administrative record that was before the Secretary at the time he made his decision.").  In addition, each of Plaintiffs' claims concerns a legal issue: whether the Department exceeded its statutory authority in promulgating the final rule (Count I), whether the Department improperly relied on certain evidence in the record (Counts II and III), and whether the Department improperly relied on information it did not make public until the final rule was issued (Count IV).  The first claim is a challenge to the Department's statutory authority to issue the regulation, while the latter three claims pertain to whether the Department's reliance on certain information was proper.   As such, all of the claims in this case concern pure legal issues that must be resolved on the basis of the record assembled by the Department.  Thus, not only does § 46110(a), by its terms, require that these claims be pursued in a court of appeals, but review in an appellate court makes practical sense as well. *Cf Deutsche Lufthansa Aktiengesellschaft v. Civil Aeronautics Bd.*, 479 F.2d 912, 916 (D.C. Cir. 1973), *abrogated on other grounds by Chan v. Korean Airlines*, 490 U.S. 122 (1989) (concluding that, under the predecessor to § 46110, appellate courts have jurisdiction in cases "where evidence has been assembled before the agency and is not challenged, and where the issues presented are legal and not factual").[3]

---

[3]  To the extent that the fourth claim in Plaintiff's complaint—that the Department improperly relied on undisclosed research and a report from a contractor—can be construed as a challenge to the scope of the record, the D.C. Circuit has rejected the argument that these types of claims can alter the analysis under a jurisdictional statute.  In *American Petroleum Institute*, the petitioners challenging a final SEC rule argued that an

7

## B.   The final rule was issued "in whole or in part" under the Federal Aviation Act

The final rule also meets the second criterion for direct appellate review under § 46110(a) because it was promulgated "in whole or in part" under the Federal Aviation Act. As noted in the Executive Summary for the rule, "[t]he legal authority for the Department's regulatory action affecting 14 C.F.R. part 382 is 49 U.S.C. 41702, 41705, 41712, and 41310," while the legal authority for "regulatory action affecting 49 C.F.R. part 27 is Section 504 of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 794)." 78 Fed. Reg. at 67883. The first of these references is to the ACAA, which amended the Federal Aviation Act in 1986. Accordingly, the final rule was issued at least "in part" under the Federal Aviation Act and therefore meets the second requirement of § 46110(a).

To be sure, the Department stated that its authority for amending 49 C.F.R. part 27 derived from the Rehab Act rather than the ACAA. But Plaintiffs do not appear to

---

"allegation of bad faith or claims that an administrative record is insufficient to facilitate judicial review" should create an exception to the statutory rule that the agency's orders were reviewable only in the court of appeals. 714 F.3d at 1334. The D.C. Circuit rejected this argument, noting that challenges to the scope of an administrative record are rare and that there was no evidence that Congress intended such an exception to the jurisdictional provision. *Id.* Likewise, there is no evidence here that Congress intended the jurisdictional analysis under § 46110(a) to be affected by allegations regarding the scope of the record. In any event, any claim Plaintiffs made about the scope of the record could be raised before the appellate court through the filing of a Motion to Supplement the Record.

Nor are there any factual issues to resolve with respect to Count IV of the complaint. As Plaintiffs note in the complaint, the Department disclosed the information on which it allegedly improperly relied on November 4, 2013, the same date that the final rule was announced. *See* Compl. ¶ 72. Plaintiffs' claim is limited to the contention that the Department's reliance on this information was improper, which is a legal issue for a court (but not this Court) to decide. No further factual development is necessary to resolve this claim.

8

consider the Rehab Act to be a significant separate aspect of the rule's statutory basis.[4] Moreover, even if the Court views that part of the rule promulgated under the Rehab Act as being distinct from the rest of the rule for jurisdictional purposes, whatever part of the case might then have been seen as falling outside the "in whole or in part" element of the statute's jurisdictional provision would still be most appropriately litigated in an appellate court. Courts have routinely treated such claims as all belonging in the same forum so as to avoid "a danger that two proceedings involving essentially the same issue could occur simultaneously." *Abromowitz v. EPA*, 832 F.2d 1071, 1076 (9th Cir. 1987), *superseded on other grounds by statute as stated in Hall v. EPA*, 263 F.3d 926 (9th Cir. 2001); *see also NW Food Processors Ass'n v. Reilly*, 886 F.2d 1075, 1078 (9th Cir. 1989) (exercising exclusive jurisdiction over a Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) challenge to a "cancellation" provision and, to avoid bifurcated review, exercising ancillary jurisdiction over a challenge to a FIFRA provision regulating "existing stocks" over which the district court normally had jurisdiction). *Cf. U.S. ex rel Long v. SCS Bus. & Technical Inst., Inc.*, 173 F.3d 870, 873 (D.C. Circuit 1999) (noting that the D.C. Circuit exercises pendent jurisdiction over claims that are "inextricably intertwined" with claims properly brought in the appellate court). As the Seventh Circuit has explained, "[w]hen an agency decision has two distinct bases, one of which provides for exclusive jurisdiction in the courts of appeals, the entire decision is reviewable exclusively in the appellate court." *Suburban O'Hare Comm'n v. Dole*, 787 F.2d 186,

---

[4] Plaintiffs make no reference to the Department's reliance on its Rehab Act authority but instead note only that the Department relied on its authority under the ACAA. *See* Compl. ¶ 34. In addition, Count I of the complaint challenges only the Department's exercise of authority under the ACAA and does not reference the Department's invocation of its authority under the Rehab Act. *See* Compl. ¶¶ 32-40.

192 (7th Cir. 1986).  Thus, "[i]f there is any ambiguity as to whether jurisdiction lies with a district court or with a court of appeals we must resolve that ambiguity in favor of review by a court of appeals."  *Id*. at 192-93.

And there can be no question that there is no distinction in this case between ACAA-related claims and claims challenging any aspect of the rule issued under the Rehab Act.  The interest of judicial economy weighs strongly in favor of requiring Plaintiffs' challenge to the final rule to be brought in one forum.  Both sets of regulations affected by the final rule—those promulgated pursuant to the Department's authority under the ACAA and those promulgated pursuant to its Rehab Act authority—impose the same obligations for kiosk accessibility.  The complaint, furthermore, makes no distinction between the part of the final rule affecting the ACAA regulations and that part affecting the Department's regulations pursuant to the Rehab Act.  Indeed, Plaintiffs' challenge is to the Department's rulemaking process itself and the information the Department relied on during that process, so the analysis of Plaintiffs' claims is the same regardless of whether the ACAA regulations or the Rehab Act regulations are at issue.  For these reasons, if the Court concludes that the Rehab Act portion of the final rule was not promulgated "in part" under the Federal Aviation Act for purposes of § 46110(a), it should nonetheless exercise its discretion to require that all of Plaintiffs' claims be heard in the court of appeals so as to avoid unnecessary and inefficient bifurcated review. [5]

---

[5] Although the court of appeals is the proper forum to resolve claims such as those raised in Plaintiffs' complaint, this does not mean that Plaintiffs' case should—or even could—be transferred to a court of appeals under 28 U.S.C. § 1631.  That section provides for transfer of a proceeding from a jurisdictionally inappropriate court to another court "in which the action or appeal could have been brought at the time it was filed or noticed."  But this matter would have been filed late if it had been filed initially in an appellate court at the time it was filed here.  Importantly, § 46110(a) requires that a

10

**CONCLUSION**

For all of the foregoing reasons, the Court should grant the Department's Motion to Dismiss.

Dated: May 20, 2014               Respectfully submitted,

                                  STUART DELERY
                                  Assistant Attorney General

                                  RONALD C. MACHEN JR.
                                  United States Attorney
                                  District of Columbia

                                  JUDRY L. SUBAR
                                  Assistant Branch Director,
                                  Federal Programs Branch

                                  *s/Nathan Swinton*
                                  NATHAN SWINTON (NY Bar)
                                  Trial Attorney
                                  United States Department of Justice
                                  Civil Division, Federal Programs Branch
                                  20 Massachusetts Avenue NW
                                  Washington, DC 20530
                                  Telephone: (202) 305-7667
                                  Fax: (202) 616-8470
                                  Nathan.M.Swinton@usdoj.gov

                                  Attorneys for Defendants

---

challenge to an order issued by the Secretary be brought within 60 days of the order being issued, unless the court determines that "there are reasonable grounds for not filing by the 60th day. 49 U.S.C. § 46110(a). The rule was promulgated on November 12, 2013, but Plaintiffs did not file their complaint until January 22, 2014, more than 60 days after the deadline for timely filing in the court of appeals. Their complaint makes no reference to any reason for the late filing. Thus, while a court of appeals would be a proper court to determine whether Plaintiffs have grounds on which to challenge the rule, the Department does not concede that Plaintiffs' claims were brought in a timely fashion. And of course any questions going to the merits of Plaintiffs' claims would be exclusively within the purview of the court of appeals to decide if they could be decided anywhere. *Telecomms. Research and Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Circuit 1984) (holding that the court of appeals is the sole court that can review challenges that implicate that court's jurisdiction).

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2014, the foregoing document was filed with the Clerk of Court via the CM/ECF system, causing it to be served on Plaintiff's counsel of record.

*s/Nathan Swinton*
NATHAN SWINTON